D. Clay Taylor (pro hac vice)
Josiah R. Fricton (pro hac vice)
1221 Nicollet Mall, Suite 212
Minneapolis, MN 55403
Phone (612) 904-7376
FAX   (612) 904-7377
Email: clay@replawyer.com
Email: joe@replawyer.com

J. Scott Humphrey, SBN 150476
HUMPHREY + LAW
J. Scott Humphrey, A Prof. Corp.
1158 26th Street #560
Santa Monica CA 90403
P: 310-890-5326
F: 877-208-4138
Email: scott@humphreylaw.co

Attorneys for Plaintiff DATSCAT, INC.

*UNITED STATES DISTRICT COURT*

*CENTRAL DISTRICT OF CALIFORNIA*

*SOUTHERN DIVISION*

| | | |
|---|---|---|
| Datscat, Inc., a California corporation, | ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| Earth & Sea Wear, LLC, a Florida limited liability company, | ) ) ) ) | |
| Defendant. | ) | |

COMPLAINT - 1

**COMES NOW,** the Plaintiff, Datscat, Inc. ("Datscat"), for its complaint against Defendant, Earth & Sea Wear, LLC d/b/a Luli Fama ("Luli Fama"), stating and alleging as follows:

PARTIES, JURISDICTION & VENUE

1. Plaintiff, Datscat, Inc., is a corporation duly formed under the laws of the State of California, with its principal place of business located in the City of San Clemente, Orange County, California. Datscat is in business as a multi-line, commissioned, independent sales representative selling products for manufacturers and importers in the apparel industry. Catherine Breton is Datscat's president and sole shareholder.

2. Earth & Sea Wear, LLC d/b/a Luli Fama is a Florida limited liability company engaged in business as a manufacturer and/or importer of swimwear apparel products. Luli Fama maintains its principle place of business in the City of Miami, Dade County, Florida. Luli Fama is a "manufacturer" as that term is defined by Cal. Civil Code §1738.12(a). Gregorio, Augusto, and Lourdes Hanimian are the members and officers of Luli Fama.

3. Upon information and belief, Earth & Sea Wear, LLC is a successor corporation to Earth & Sea Wear, Inc. Earth & Sea Wear, Inc. was incorporated on or about March 5, 1993. On or about July 21, 2005, Earth & Sea Wear, Inc. registered the fictitious name Luli Fama. Earth & Sea Wear, LLC was formed on or about March 14, 2011. On or about October 28, 2011,

Gregorio Hanimian transferred ownership of the fictitious name Luli Fama from Earth & Sea Wear, Inc. to Earth & Sea Wear, LLC. Upon information and belief, Earth & Sea Wear, Inc. and Earth & Sea Wear, LLC have the same officers and members, personnel, assets, location, equipment, and customers.

4. Because Luli Fama has contracted with Datscat, a California corporation, to sell its products to retail store and other types of customers located in a territory that included the State of California, and as a result of Datscat's efforts, Luli Fama has enjoyed millions of dollars in revenue from the sale of its products to retail store and other types of customers located in the State of California, Luli Fama is "deemed to be doing business in this state" pursuant to Cal. Civil Code §1738.14 and this Court's exercise of personal jurisdiction over Luli Fama, both general and specific, is proper.

5. Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, this Court has subject matter jurisdiction pursuant to 28 USC §1332.

6. Because this Court has personal jurisdiction over Luli Fama and because many of the events giving rise to the allegations and claims in this case arose out of events transpiring in the State of California and this district and division, venue is also proper pursuant to 28 USC §1391(a).

7. Pursuant to Fed.R.Civ.P. 38, Datscat demands a trial by jury on all counts of this complaint to which such a trial is available.

## FACTS COMMON TO ALL COUNTS

8. In March 2008, Luli Fama retained Datscat to work as its independent sales representative, selling its swimwear apparel products in a territory comprised of the State of California and to any retail store or other account that Datscat opened or reopened, regardless of the account's location.

9. Luli Fama agreed to pay Datscat a 5% commission on the net-shipped value of all sales to department store accounts, such as Macy's, and a 10% commission on sales to all other retail accounts. The parties' agreed that the only house account, excluded from Datscat's territory, was the retail store account Gone Bananas.

10. Other than emails outlining the commission rate, initial territory, and sole house account, Luli Fama never provided Datscat with a signed written sales representative agreement, as required by California law.

11. In July 2010, Luli Fama agreed to expand Datscat's territory to include the State of Hawaii and the Territory of Quebec. Luli Fama never memorialized this revised territory in a written sales representative agreement.

12. Later, Datscat agreed to a reduced commission rate of 8% upon opening select retail store accounts, specifically: Bikini Village, Inc. in November 2011; Amazon.com in January 2012; and Swim Outlet in July 2013, and a commission rate of 5% for two retail accounts: Aloha Swim in Fall 2012 and

Winners in September 2013. Luli Fama never memorialized these revised commission rates in a written sales representative agreement.

13. At the beginning of the parties' relationship, Luli Fama had negligible sales in Datscat's territory. Over the next six years, Datscat made an enormous investment in creating and growing a market in Luli Fama's products. In fact, from 2008 through 2013, Datscat grew Luli Fama's sales by approximately 590%: from $47,352.80 in sales for 2008 to $2,827,875.11 in sales for 2013. Datscat was also responsible for opening over 80 in retail store accounts.

14. While Luli Fama provided Datscat with commission statements, during the course of their relationship Luli Fama never provided Datscat with any of the following information, as required by California law: 1) an accounting for the orders for which payment was made, or 2) the rate of commission paid for each order. Luli Fama's refusal to provide this information made it impossible for Datscat to reconcile the commissions it received to the orders it procured or to determine if Luli Fama was paying Datscat all of its earned commissions.

15. It turns out that—unbeknownst to Datscat—Luli Fama had been underpaying commissions for years.

16. In February 2014, after receiving a report detailing Datscat's sales of Luli Fama's products from 2008 through 2013 and the commissions paid by Luli Fama, Catherine Breton learned that Luli Fama had—in several ways—significantly under paid Datscat its earned commissions.

17. Luli Fama had been paying Datscat a lower commission rate than had been agreed to on sales to Datscat's largest accounts. Specifically, Luli Fama had been paying Datscat an 8% commission on sales to Diane's and Zappos, a 5% commission on sales to Maui Clothing Body and Beach, and a 4% commission on sales to La Boutique du Danseur, when Luli Fama agreed that it would pay Datscat a 10% commission on sales to these accounts. Luli Fama's failure to pay this agreed-upon commission rate is a breach of contract, and has resulted in unpaid commissions owed by Luli Fama to Datscat, in an amount to be proven at trial, but which is approximately $97,883.53.

18. Luli Fama has also failed to pay Datscat *any* commissions on sales to certain retail accounts; a further breach of contract, which has resulted in Luli Fama owing additional commissions to Datscat, in an amount to be proved at trial, but which is approximately $82,519.60.

19. Further contrary to the parties' agreement and the custom in the apparel industry, Luli Fama had been deducting freight and advertising discounts it has given retail accounts from Datscat's commissions. These are additional commissions that should have been paid to Datscat, in an amount to be proven at trial, but which is approximately and additional $2,973.00.

20. In April 2014, Breton confronted Luli Fama about these unpaid commissions, and demanded full payment by May 9, 2014, but Luli Fama refused, claiming no commissions were owed.

21. Unfortunately, on July 1, 2014—a little over a month after Luli Fama refused to bring the commission arrearage current—Luli Fama terminated Datscat as its independent sales representative.

22. At the time of termination, in addition to the above described unpaid commissions, Luli Fama owed Datscat commissions on orders obtained in April, May, and June 2014 but to be shipped sometime after termination. While these future commissions will be in an amount determined at trial, upon information and belief they are an additional $91,595.65.

23. In addition, upon information and belief, Luli Fama owes Datscat credits from sales samples that Datscat has returned to Luli Fama, in an amount to be proven at trial, but which is an additional $11,700.00.

24. Upon information and belief, the total amount of unpaid commissions and credits that are due from Luli Fama to Datscat is $286,671.78.

25. Despite repeated demands—both oral and written—Luli Fama continues its refusal to pay Datscat these unpaid commissions and sample credits.

## COUNT I – BREACH OF CONTRACT

26. Datscat reasserts each and every factual allegation contained in complaint paragraphs 1 through 25 as if fully restated herein.

27. At all times relevant to this Complaint, there was an unwritten sales representative agreement between Luli Fama and Datscat, under the terms of

which Luli Fama agreed to pay Datscat a commission on the net-shipped value of sales into Datscat's territory or its retail store accounts.

28. Datscat has performed as required by the parties' contract. It is responsible for growing Luli Fama's business by over 590%, and—over the course of the parties' relationship—procuring over $8 Million in sales of Luli Fama's products.

29. By failing to pay Datscat commissions and by its unauthorized deduction of items against Datscat's commissions, as described in prior Complaint paragraphs, Luli Fama has committed multiple breaches of the parties' unwritten contract.

30. As a direct and proximate result of Luli Fama's breach of the parties' agreement, Datscat has suffered and will continue to suffer, compensatory and consequential damages, in an amount to be proven at trial, but which will exceed $75,000.00.

## COUNT II – QUANTUM MERUIT

31. Datscat reasserts each and every allegation contained in complaint paragraphs 1 through 30 as if fully restated herein.

32. At Luli Fama's request and direction, Datscat procured purchase orders for the purchase of significant quantities of Luli Fama's products.

33. Datscat undertook to procure these purchase orders in reasonable and justifiable reliance on the promise that Luli Fama would fairly compensate it for this work.

34. Luli Fama has enjoyed the substantial benefit of Datscat's labor and effort in procuring these purchase orders, and has realized substantial revenue and income from this business, but refuses to compensate Datscat for the benefit so received.

35. Should the Court determine that no contract existed between the parties, then alternatively under the doctrines of quantum meruit and unjust enrichment, Datscat is entitled to fair and reasonable compensation for the value of the benefit it has bestowed upon Luli Fama, as described in preceding Complaint paragraphs, all in an amount to be proven at trial, but which will likely exceed $75,000.00.

## COUNT III – FAILURE TO PAY COMMISSIONS
(Cal. Civ. Code Sec. 1738.10 et seq.)

36. Datscat reasserts each and every factual allegation contained in complaint paragraphs 1 through 35 as if fully restated herein.

37. Datscat is a "wholesale representative" as that term is defined by Cal. Civil Code §1738.12(e).

38. Luli Fama is a "manufacturer," a "jobber," or a "distributor," as those terms are defined by Cal. Civil Code §1738.12(a), (b) and (c).

39. By its willful failure to pay Datscat commissions earned on the sales of its products into Datscat's territory, Luli Fama has violated the commission payment terms of Cal. Civil Code §1738.15.

40. Pursuant to Cal. Civil Code §§1738.15 and 1738.16, as a direct and proximate result of Luli Fama's violation of California law, Datscat has suffered damages, in the form of unpaid commissions, statutory exemplary damages, costs and attorneys' fees, in an amount to be proven at trial, but which will exceed $75,000.00.

## COUNT IV – FAILURE TO ENTER INTO WRITTEN SALES AGREEMENT AND PROVIDE COMMISSION STATEMENTS

(Cal. Civ. Code Sec. 1738.10 et seq.)

41. Datscat reasserts each and every factual allegation contained in complaint paragraphs 1 through 40 as if fully restated herein.

42. By its failure to enter into or provide to Datscat a signed written sales representative contract that set forth 1) the rate and method by which the commission is computed; 2) the time when commissions will be paid; 3) the territory assigned to the sales representative; 4) all exceptions to the assigned territory and customers therein; and 5) what chargebacks will be made against the commissions, Luli Fama has violated the requirements of Cal. Civil Code §1738.13(a)–(c).

43. By its willful failure to provide Datscat a commission statement with each commission payment that 1) accounted for the orders for which payment is made, including the customer's name and invoice number and 2) set for the rate of commission on each order, Luli Fama has violated the requirements of Cal. Civil Code §1738.13(d).

44. Pursuant to Cal. Civil Code §§1738.15 and 1738.16, as a direct and proximate result of Luli Fama's violation of California law, Datscat has suffered damages, in the form of unpaid commissions, statutory exemplary damages, costs and attorneys' fees, in an amount to be proven at trial, but which will exceed $75,000.00.

## COUNT V – ACCOUNTING

45. Datscat reasserts each and every factual allegation contained in complaint paragraphs 1 through 44 as if fully restated herein.

46. Over the course of the parties' business relationship, Luli Fama has failed to provide any accounting or information to Datscat confirming the precise volume of sales and shipments into Datscat's territory as well as the commissions earned, past due, and which will become due on the business in Datscat's territory.

47. Datscat is equitably entitled to a detailed and complete accounting of all shipments; sales; credits; pending orders; and commission earned, past due,

and which will become due on the business in Datscat's territory. Datscat is also equitably entitled to an accounting of its sample account with Luli Fama.

**WHEREFORE,** the Plaintiff, Datscat, Inc., prays the Court enter an order for judgment in its favor for the following relief:

1. Compensatory and consequential damages from Defendant, as well as such evidentiary rulings and presumptions, for breach of the parties' agreement and violation of Cal. Civil Code 1738.10, *et seq.*, in an amount to be proven at trial, but which will exceed $75,000.00;

2. Alternatively, under the doctrine of quantum meruit and unjust enrichment, an award of compensatory and consequential damages to Plaintiff from Defendant, in an amount to be proven at trial, but which will exceed $75,000.00.

3. Additionally, awarding Plaintiff statutory exemplary damages from Defendant for Defendant's violation Cal. Civil Code 1738.10, *et seq.* or as may be provided under applicable law;

4. Additionally, ordering Defendant to provide Plaintiff a detailed and complete accounting of all shipments; sales; credits; pending orders; and commission earned, past due, and which will become due on the business in Datscat's territory. Datscat is also equitably entitled to an accounting of its sample account with Luli Fama;

5. Additionally, awarding Plaintiff its costs, disbursements, statutory interest, and reasonable attorneys' fees from Defendant, per Cal. Civil Code 1738.16 or as may be provided under applicable law; and

6. Such further additional relief as the Court deems just and reasonable.

Respectfully Submitted:

Dated: July 18, 2014.

HUMPHREY + LAW

_____
J. Scott Humphrey
Attorneys for Plaintiff DATSCAT, Inc.

In Association With:

D. Clay Taylor (*pro hac vice*)

Josiah R. Fricton (*pro hac vice*)